No. 80-80

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

ESTHER KNOEPKE, et al.,

Plaintiffs and Appellants,

-vs-

SOUTHWESTERN RAILWAY CO., et al.,

Defendants and Respondents.

Appeal from: District Court of the Tenth Judicial District,
In and for the County of Judith Basin,
The Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Robert L. Johnson and Torger Oaas, Lewistown,
Montana

For Respondent:

Robert J. Emmons, Great Falls, Montana
Dzivi, Conklin & Nybo, Great Falls, Montana
Alexander and Baucus, Great Falls, Montana

Submitted on Briefs: October 9, 1980
Decided: DEC 10 1980

Filed: DEC 10 1980

Thomas J. Kearney
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The plaintiffs in four wrongful death and survivorship lawsuits, Esther Knoepke, Allan Samson and Judith Mikkelson, Thomas and June Brady, and Frank and Marion Dusek, appeal from the judgment of the Tenth Judicial District Court, Judith Basin County. On December 28, 1979, the Hon. W. W. Lessley directed the entry of final judgment of an order entered June 7, 1977, in which the Hon. LeRoy McKinnon dismissed all the nonresident defendants from the plaintiffs' lawsuits. In his order, Judge Lessley found no reason for delaying the entry of Judge McKinnon's order and therefore directed final judgment be entered pursuant to Rule 54(b), M.R.Civ.P. In the plaintiffs' previous attempt to appeal Judge McKinnon's order, this Court declined to entertain the appeal because the dismissal order did not comply with Rule 54(b). See, Knoepke v. Southwestern Ry. Co. (1979), _____ Mont. _____, 595 P.2d 376, 36 St.Rep. 957.

The appeal is now properly before us. For reasons stated below, we affirm the decision of the District Court to dismiss the nonresident defendants from these lawsuits.

Plaintiffs are the legal survivors and relatives of passengers killed in an airplane crash which occurred near Stanford, Montana. Plaintiffs allege that an employee of the nonresident defendants negligently operated the airplane. This Court has twice reviewed the facts of this tragic accident, in Knoepke, supra, and in Haker v. Southwestern Ry. Co. (1978), _____ Mont. _____, 578 P.2d 724, 35 St.Rep. 523. The Haker case involved a wrongful death and survivorship lawsuit brought by the administrator of the estate of a passenger killed in this same airplane crash. Although the facts surrounding this accident are provided in

-2-

our previous Knoepke and Haker decisions, we shall reiterate them briefly.

On September 29, 1973, an airplane piloted by Arthur Myllymaki, Jr., crashed into the hills surrounding Stanford, Montana. The aircraft was owned by defendant, Charles Newman and loaned to defendant, Dudley Newman, for a flight from Arizona to Washington State. Following the flight to Washington, Dudley Newman gave Myllymaki, a pilot for defendant Sawyer Aviation Company, permission to fly the airplane to Stanford, to visit Myllymaki's relatives. At the time of the crash, Myllymaki was giving a joyride to his friends and relatives, including Lenny Haker, Patricia and Lyle Myllymaki, Zane Aaro Samson, John Raymond Brady and Leslie David Dusek. None survived the airplane crash.

Plaintiff Esther Knoepke is the guardian ad litem for the three minor children of Patricia and Lyle Myllymaki. Plaintiffs Allan Samson and Judith Mikkelson are the parents and legal heirs of Zane Aaro Samson. Plaintiffs Thomas and June Brady are the natural parents and legal heirs of John Raymond Brady. Plaintiffs Frank and Marion Dusek are the natural parents and legal heirs of Leslie David Dusek.

The original defendants in the Knoepke lawsuit included the Arizona Railway Company, Sawyer Aviation Company and the special administrator of Arthur Myllymaki's estate, Cecelia K. Bailey. The original defendants in the other three lawsuits included Southwestern Railway Company, Sawyer Aviation Company and Cecelia Bailey. The corporate defendants are all Arizona corporations.

Other defendants later included in these lawsuits were Charles Newman, Dudley Newman and Darrell Sawyer. Charles Newman and Dudley Newman are brothers and are both residents of the State of Arizona, and officers and stockholders in

-3-

Southwestern Railway Company. Additionally, the two brothers are engaged in a partnership doing business as Southwestern Railway Company. Darrell Sawyer, another Arizona resident, is the principal stockholder and general manager of Sawyer Aviation Company. He also does business individually as Sawyer Aviation Company and as Sawyer School of Aviation.

In response to the complaints filed by the plaintiffs, defendant Sawyer Aviation Company entered a "special appearance" in each case moving to quash service of process, claiming lack of personal jurisdiction in the Montana District Court. Defendant Southwestern Railway Company filed an answer in the Samson, Brady and Dusek suits also challenging the jurisdiction of the District Court. Southwestern Railway Company was not named as a defendant in the Knoepke suit. Defendant Cecelia K. Bailey filed an answer in all four cases. Extensive discovery took place after these defendants made their initial appearance.

On September 28, 1976, the Knoepke plaintiff filed a motion requesting that Arizona Railway Company be dropped from her lawsuit as a defendant. Knoepke requested that Southwestern Railway Company be substituted in its place. On the same day, the plaintiffs in all four suits moved to add Dudley Newman, Thomas Newman and Darrell Sawyer as party defendants.

On June 7, 1977, Judge McKinnon granted plaintiffs' motions to add Dudley Newman, Charles Newman and Darrell Sawyer as defendants. The judge ordered the substitution of Southwestern Railway Company in the Knoepke lawsuit. The judge further ordered that the defenses previously interposed by the defendants in the suits be deemed interposed as to the joined defendants.

-4-

At the same time, however, Judge McKinnon entered the following order:

"IT IS ORDERED as follows:

"1. The motion of the Defendants Darrell Sawyer and Sawyer Aviation Company to dismiss the complaint as to said Defendants be, and it is hereby, granted.

"2. The motion of the Defendants Southwestern Railway Company, a corporation, Dudley Thomas Newman and Charles R. Newman, to dismiss the complaint as to said Defendants be, and it is hereby, granted.

"3. The motion of the Plaintiffs for partial summary judgment be and is hereby, denied."

The plaintiffs' attorney thereupon disqualified Judge McKinnon. Judge W. W. Lessley thereafter assumed jurisdiction of the cases and entered the December 1979 order directing entry of judgment on Judge McKinnon's order. From this order for final judgment, plaintiffs appeal, presenting the following issues for our review:

1. Is a "special appearance" made by a party defendant to quash service of a summons allowed under the Montana Rules of Civil Procedure?

2. May a District Court use affidavits to determine its jurisdiction over a party to a lawsuit without denying any of the parties to the suit the right to a trial?

3. Did the District Court err by ordering the dismissal of the nonresident defendants from the lawsuit?

In their responding briefs, defendants raise an additional issue: Did the District Court err in its June 1977 order joining the additional defendants without notice?

We shall discuss these issues in the order they are presented.

If a party to a lawsuit plans to appear in court to attack the court's personal jurisdiction, a special appearance of the party, as opposed to a general appearance,

-5-

is no longer required. Rule 12, M.R.Civ.P., abolished the distinction between special and general appearances. Following service of process a party can attack the court's personal jurisdiction simply by raising the jurisdiction issue in an initial response to plaintiff's claim by motion before answering the claim or in an answer to the claim. If the party's initial response to the opponent's claim raises a personal jurisdiction issue, then the party is not subject to the general power of the court solely because of the response. See, 2A Moore's Federal Practice § 12.12.

In this case, the Arizona defendants included attacks on the District Court's personal jurisdiction in their initial responses to the plaintiffs' complaints. In each response, the defendants moved the court to dismiss the claims for lack of personal jurisdiction. Although defendant Sawyer Aviation Company labeled its initial response a "special appearance", the contents of the response serve as a motion to dismiss for lack of jurisdiction. The court did not commit reversible error by granting a motion that used the antiquated label of special appearance.

On the second issue, the plaintiffs contend that the court erred by using affidavits and discovery material included in the court file to determine whether the deceased pilot was acting within the scope of his employment with the Arizona defendants when the airplane crash occurred. Plaintiffs contend the court's determination here based on the discovery materials and affidavits, amounts to a decision of the defendant's ultimate tort liability rather than a factual determination of the court's jurisdiction over the Arizona defendants. We disagree. This determination was necessary for the court to respond to the

Arizona defendants' claim regarding the court's jurisdiction. Sufficient minimum contacts between Montana and nonresident defendants must be found to exist in order for the court to exercise jurisdiction over these defendants. See, State ex rel. Goff v. District Court of First Jud. Dist. (1971), 157 Mont. 495, 487 P.2d 292.

We agree with defendants' argument that while jurisdiction and ultimate liability in tort where disputes of fact exist are not subject to determination by motion, common collateral issues related to the defendant's connection with the tortious act are jurisdictional issues which may be resolved before trial. The court's use of affidavits to resolve these collateral issues was correct. The plaintiffs' constitutional rights were not violated by the court's action.

In Halsey Brant v. Gatens Cattle Co. et al. (unpublished opinion, Civil No. 761, decided August 20, 1969), the Hon. William Jameson used affidavits to decide a personal jurisdiction question quite similar to the question before Judge McKinnon. In Halsey, affidavits submitted by the parties were used to determine whether one of the named defendants was employed by a second named defendant, a non-Montana resident. Through the affidavits, Judge Jameson found the nonresident defendant was not the employer, which defeated the plaintiff's claim of minimum contacts between the non-resident defendant and the State of Montana. With regard to his use of the affidavits to determine jurisdiction, the court held:

> "The use of affidavits . . . (to determine personal jurisdiction) under Rule 12(d) is proper. While the rule itself does not specify the type of evidence which may be presented, Rule 43(e) provides that, 'When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter

be heard wholly or partly on oral testimony or depositions.'

"Rule 56(e), relating to motions for summary judgment, provides that, 'Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'"

Buttressing their argument on this issue, plaintiffs cite Harrington v. Holiday Rambler Corporation (1974), 165 Mont. 32, 525 P.2d 556. In Harrington, we commented on the use of affidavits as follows:

"The most troublesome aspect here is that defendant was permitted simply to say 'Nay' upon affidavit and thereby prevent plaintiffs from having their day in court. We are not disposed to say it is always improper to grant a motion to dismiss for lack of jurisdiction over the defendant when at a hearing on that motion the defendant offers nothing more in support of its position that an affidavit, but we do feel that in the normal course of things plaintiffs at least ought to have the opportunity to cross-examine the defendant. Fundamental fairness requires that to the extent plaintiffs are denied such an opportunity, defendant's affidavit should be given less weight."

The case now before us is significantly different than Harrington. Here, extensive discovery materials and affidavits were presented to the court. We approve of the District Court's use of these extensive discovery materials and affidavits in determining its jurisdiction over the nonresident defendants. The plaintiffs were given a sufficient opportunity to examine the nonresident defendants through depositions and interrogatories and to develop their argument regarding jurisdiction therein.

Plaintiffs' third issue asserts the District Court erred in acting on its own in dismissing the nonresident defendants from these lawsuits. Plaintiffs argue that because the defendants did not specifically file a motion to dismiss before the court, the court was powerless to dismiss the defendants. Plaintiffs, however, misstate the

-8-

defendants' actions. An examination of the initial pleadings filed by the nonresident defendants indicates the defendants specifically requested the court to dismiss the actions for lack of jurisdiction. These express requests necessitated the court's determination of jurisdiction and dismissal of defendants from the lawsuits. The defendants' responsive pleadings empowered the court to act.

The fourth issue is brought by the nonresident defendants in their briefs filed in this appeal. The defendants argue that the District Court erred by granting plaintiffs' motions to add additional parties to the lawsuits without first providing notice of the motion to the defendants. We are asked to consider this issue under the "doctrine of compensatory error". We decline to do so. We find the court's action caused no prejudice to the defendants and therefore, we shall not address the question.

For the foregoing reasons, we affirm the judgment of the District Court dismissing the nonresident defendants from these lawsuits.

_____
                Justice

We Concur:

_____
        Chief Justice

_____

_____

_____
            Justices

-9-