No. 88-552

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

MINUTEMAN AVIATION, INC.,

Plaintiff and Appellant,

-vs-

M.R. SWEARINGIN, d/b/a SWEARINGIN
AIRCRAFT ENGINE SERVICE,

Defendant and Respondent.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Boone, Karlberg & Haddon; Sam E. Haddon, Missoula,
Montana

For Respondent:

John O. Mudd; Kelly M. Willis; Garlington, Lohn &
Robinson, Missoula, Montana

---

Submitted on Briefs: March 2, 1989

Decided: April 27, 1989

Filed:

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Minuteman Aviation, Inc. brought an action against M.R. Swearingen d/b/a/ Swearingen Aircraft Services in the State of Montana, Fourth Judicial District, Missoula County. Mr. Swearingen, a resident of Oklahoma, moved to quash service or to dismiss for lack of personal jurisdiction. His motion to dismiss was granted, and Minuteman appeals. We reverse and remand.

The issue presented for our review is whether the defendant in this action can be subjected to personal jurisdiction in Montana.

Minuteman Aviation, Inc. (Minuteman) is a Montana corporation, whose operations include aerial crop spraying. Mr. Swearingen doing business as Swearingen Aircraft Engine Services (Swearingen), does business in the State of Oklahoma where Swearingen overhauls and repairs aircraft engines.

Affidavits were filed by both parties. In part the affidavits contradict each other. The uncontradicted portion of such affidavits shows that in March of 1987, Swearingen completely overhauled an aircraft engine for Minuteman. The repair work was done in Oklahoma. After installation in a Minuteman aircraft, the engine failed while the aircraft was used for crop spraying in Montana on April 5, 1987, and the aircraft crashed near Conrad, Montana. The affidavits further establish that at the request of FAA, Mr. Swearingen and one of his representatives came to Montana in May of 1987 to inspect the tear down of the engine in an attempt to determine the cause of the engine failure. The engine was returned by Minuteman to Swearingen in the State of Oklahoma for another repair. After repair, the engine was shipped back to Montana and placed in the aircraft. The engine failed again and the aircraft was taken out of service.

Minuteman filed suit in Montana against Swearingen, alleging negligence, breach of warranty and breach of contract. In response to the complaint Swearingen filed an affidavit and motion to quash or in the alternative to dismiss for lack of personal jurisdiction. In Mr. Swearingen's affidavit he asserts facts which would defeat jurisdictional requirements. The president of Minuteman, Mr. Kenneth Mamuzich, then filed an affidavit in support of allegations made in the complaint regarding Swearingen's contacts within the State of Montana. Mr. Swearingen then filed an opposing affidavit. After a hearing on the issues, the court granted Mr. Swearingen's motion to dismiss.

Did the District Court err in granting defendant's motion to dismiss for lack of personal jurisdiction?

Whether the State of Montana may claim personal jurisdiction over a nonresident defendant is a two-part inquiry. As stated in Simmons v. State (1983), 206 Mont. 264, 271-72, 670 P.2d 1372, 1376:

> For a Montana court to exercise jurisdiction over a nonresident defendant, two questions must be considered. (1) Does the nonresident defendant come within the provisions of Montana's long-arm jurisdiction statutes; and (2) would exercise of long-arm jurisdiction over the nonresident comport with traditional notions of fair play and substantial justice. May v. Figgins (Mont. 1980), 607 P.2d 1132, 37 S.Rep. 493; Haker v. Southwestern Ry. Co. (1978), 176 Mont. 364, 578 P.2d 724. See, generally, International Shoe Co. v. Washington (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95. If we find, as a matter of statutory construction, that the nonresident does not engage in any of the several activities enumerated in our long-arm statute, then our analysis ends and we must decline jurisdiction. However, even if the nonresident has done something which potentially confers jurisdiction, we must advance to the due process component

which is ultimately determinative of the jurisdictional question.

In accordance with the first inquiry, personal jurisdiction must initially be established pursuant to Rule 4B, M.R.Civ.P. The relevant portions of that statute provide:

> (1) Subject to jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>    (a) the transaction of any business within this state;
>    (b) the commission of any act which results in accrual within this state of a tort action.
>    . . .
>    (e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or
>    . . .
> (2) Acquisition of jurisdiction. Jurisdiction may be acquired by our courts over any person through service of process as herein provided; or by the voluntary appearance in an action by any person either personally, or through an attorney, or through any other authorized officer, agent or employee.

While the plaintiff does not claim that Swearingen was "found within" Montana, it does contend that Swearingen transacted business within Montana and also committed acts which resulted in accrual of a tort action in Montana. As pointed out in Simmons, in order to exercise jurisdiction consistent with due process, it is necessary that an entity have had "minimum contacts" with the forum state so that requiring it to defend will not offend traditional notions of fair play and substantial justice. Simmons, 670 P.2d at 1377.

4

This Court has previously affirmed a three-part test in analyzing the due process component. In Simmons, 670 P.2d at 1378, we quoted the Ninth Circuit Court of Appeals in acknowledging the following test:

> "If the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities. [citations omitted] If, however, the defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue whether jurisdiction will lie turns on the nature and quality of the defendant's contacts in relation to the cause of action. In our circuit, we use the following approach in making this evaluation: (1) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking its laws. (2) The claim must be one which arises out of or results from the defendant's forum-related activities. (3) Exercise of jurisdiction must be reasonable. [citations omitted]."
>
> Inherent in this approach is the recognition that while a nonresident defendant may be found to have purposely availed itself of activities within a forum state, the exercise of jurisdiction may still be unreasonable.

In the present case facts relevant to whether Mr. Swearingen can be subjected to personal jurisdiction in Montana are disputed. Both parties support their respective positions with an affidavit. By its affidavit Minuteman establishes that it became aware of Swearingen and his business through "Trade-a-Plane" magazine, subscription copies of which were received at Minuteman in Missoula, Montana. Minuteman also establishes by affidavit that Swearingen shipped the engine back to Montana after repair, knowing that

5

it was to be used for crop spraying operations in Montana. Minuteman also asserts that Mr. Swearingen voluntarily came to Montana to inspect the engine after the crash and that at that time Mr. Swearingen reaffirmed his guarantee of the prior engine overhaul and requested the engine be sent back to Oklahoma for additional repair. Finally, Minuteman asserts that two torts occurred in Montana, each caused by Swearingen.

The facts sworn to by Mr. Swearingen in his affidavit are materially different. He states that he had not advertised in "Trade-a-Plane" magazine for seven years prior to 1987. He states that after the first engine repair, plaintiff instructed him to ship the engine to Texas to be installed in an aircraft which was being repaired there. He denies that he knew this engine was to be used by plaintiff in Montana. He asserts that his appearance in Montana to inspect the engine was not voluntary but was at the insistence of the FAA. Mr. Swearingen denies that he reaffirmed his guarantee while in Montana, stating rather that Minuteman contacted him in Oklahoma after he had returned. He states that he agreed to repair the engine in Oklahoma, but with no future guarantee. And finally, Swearingen asserts that the engine failures were caused by Minuteman's own negligence. He states his belief that the FAA's official report will indicate that the engine failure was due to negligent installation of a carburetor by Minuteman, causing the first failure. He asserts that the second failure was caused either by negligent maintenance by Minuteman or by third party sabotage. Swearingen thus denies that his actions caused the accrual of a tort in Montana.

In the present case there are conflicting facts relevant to both prongs of the jurisdictional inquiry. The conflicting facts asserted by the parties are material to whether

personal jurisdiction may initially be found pursuant to the requirements of Rule 4B, M.R.Civ.P. The second inquiry, involving a due process analysis, also involves conflicting material facts. Minuteman asserts facts which could confer personal jurisdiction over Mr. Swearingen. In contrast, Mr. Swearingen asserts facts which could support a motion to dismiss for lack of personal jurisdiction. In this situation, the trial court cannot properly weigh the evidence through a "battle of affidavits."

The Ninth Circuit Court of Appeals faced a similar impasse in Data Disc, Incorporated v. Systems Technology Associates, Inc. (9th Cir. 1977), 557 F.2d 1280. In that case the appellate court stated:

> Where affidavits are directly conflicting on material points, we do not see how it is possible for the district judge to "weigh" the affidavits in order to resolve disputed issues. Except in those rare cases where the facts alleged in an affidavit are inherently incredible, and can be so characterized solely by a reading of the affidavit, the district judge has no basis for a determination of credibility.

Data Disc, 557 F.2d at 1284.

Where material jurisdictional facts are disputed, the appropriate procedure is a preliminary hearing by the District Court pursuant to Rule 12(d), M.R.Civ.P. Data Disc, 557 F.2d at 1285; See also, Gatecliff v. Great Republic Life Ins. (Ariz. App. 1987), 744 P.2d 29, 33. Additionally, the court has discretion to permit discovery to resolve factual issues. Data Disc, 557 F.2d at 1285; Wells Fargo & Co. v. Wells Fargo Express Co. (9th Cir. 1977), 556 F.2d 406, 430. Where the district court takes evidence at a preliminary hearing plaintiff must establish the jurisdictional facts by a preponderance of the evidence. Data Disc, 557 F.2d at

7

1285. In a situation where the jurisdictional facts are intertwined with facts involving the merits of the case, the district court may determine its jurisdiction in a plenary pretrial proceeding. Land v. Dollar (1947), 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209. See also 2A J. Moore, Moore's Federal Practice § 12.07 (1987).

We conclude that a pretrial hearing is appropriate in the present case to resolve factual disputes which are material to the jurisdictional issue. The district court has discretion to allow discovery relevant to these issues. We reverse the order of dismissal and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

8